*Hartford,*
*June, 1818.*

Parsons
*v.*
Ely & Parsons

## ELY and PARSONS *against* PARSONS.

An order of the county court, fixing the limits of the prison, and making the line of a street one of the boundaries, must be construed to mean the *practical* line, in contradistinction to an *air* line, specified in the laying out, or alteration of the street.

THIS was an action against *Enoch Parsons,* Esq. sheriff of the county of *Middlesex,* for the escape of *Josiah Williams* from the limits of the prison.

*Williams,* at the time of service of the writ, was standing on the steps of *Nehemiah Hubbard's* store, on the west side of *Main* street, in the city of *Middletown.* The order of court fixing the limits of the prison, was passed in *March,* 1817, and was, so far as it affects this case, as follows: " The south-east corner of Mr. *Plumbe's* store, thence northerly, by the west line of *Main* street, as far as *Washington* street; thence easterly, across the said *Main* street to the north west corner of *Jacob Sebor's* land; thence southerly, by the eastern line of said *Main* street, to the place of beginning, including the whole of *Main* street." The plaintiffs, to prove where the west line of *Main* street was, offered in evidence a report of a committee of the common council of the city of *Middletown,* and a by-law passed thereon, in *August,* 1813, declaring that said west line was, and should be, as follows, *viz.* " beginning at a point ten feet east from the north-east corner of the *Washington* hotel; thence in a straight line to a point five feet east from the dwelling-house of *Samuel Watkinson,* Esq.; thence in a straight line, which runs five inches east from the main body of the meeting-house to a stone marked H, being eight and a half feet from the south-east corner of the dwelling-house of Mrs. *Mary Mansfield;* and thence in a straight line to the dwelling-house of *William Plumbe,* Esq." To the admission of this evidence the defen-

dant objected, contending that it was irrelevant and improper ; but the court admitted it.

*Hartford,*
June, 1818.

Ely & Parsons
*v.*
Parsons.

It was agreed by the parties, that the store on the steps of which *Williams* was standing, had been built more than thirty years ; and that there never had been any railing or fence before the steps, or by the sides, but that the steps and the ground on each side had always been open to the walls of the store, to be used by all persons as they had need.

The defendant gave in evidence, a *survey,* to shew that the west line of *Main* street, as anciently established, run one link west of the east side of the steps on which *Williams* stood ; and contended, that the place where he stood, was practically a part of *Main* street.

The court found, that *Williams* was standing westward of the *air line* of *Main* street, as established by the common council, and stated in the survey ; and thereupon decided, that the defendant was by law liable for his escape.

The defendant moved for a new trial, on the ground, that the evidence offered was improperly admitted, and that the decision of the court was erroneous. The questions of law arising on this motion, were reserved in the usual manner.

*C. Whittelsey,* in support of the motion, contended, 1. That the report of the committee and by-law of the common council were improperly received, because the proceedings were not conformable to that section of the city charter, which prescribes the mode of laying out new streets, and of altering or exchanging those already laid out.(*a*) They were of no effect. The common council had no power to *fix* the line of the street in this way. Nor does the by-law afford any evidence, that the line designated was the *ancient* line of the street. It is a mere nullity.

2. That the construction put upon the order of the county court fixing the limits of the prison, was erroneous. That order never could have meant by " the west line of *Main* street," an *air* line. Its object was not to *entrap* prisoners, but to confine them within certain palpable limits. The *practical* line of the street was undoubtedly intended ; and if so, there was no escape.

(*a*) See *Stat. Conn. tit.* 34. *ch.* 8. *s.* 19.

*Hartford,*
June, 1818.

Ely & Parsons
*v.*
Parsons.

*Staples,* contra, remarked, in the first place, that the only question before the court, on the trial, was a mere matter of fact, *viz.* whether *Williams,* when this suit was brought, was within, or without, the limits of the prison. The " line" mentioned in the order of the county court, must mean the line existing at the time the order was passed. Now, admitting that the common council could not by a by-law, alter the line, the report of the committee, and the consequent by-law, were proper evidence, connected with other facts, to shew where the practical line was.

2. That the " line" mentioned in the order must mean *the line established for the street,* and not the line of particular buildings, or court-yards. The county court did not leave it in the power of individuals to enlarge or curtail the limits of the prison, as they might think proper to throw open, or enclose, a piece of land. Such a construction would render the limits forever uncertain ; and would, indeed, lay a snare for prisoners.

Swift, Ch. J. I am of opinion, that the order of the county court establishing the liberties of the prison in *Middletown,* is to be construed to extend to the practical line of the street, as it was used and travelled at the time of making the order, and so as to comprehend the whole of the street or highway between the houses, within the limits mentioned. Such was manifestly their intent. This would establish well known, definite boundaries. It cannot be presumed, that the order referred to a survey, which had not been regarded in practice, and which would exclude part of the open street, and comprehend part of the houses : where the limits would be uncertain, to be decided by a subsequent admeasurement, and the judgment of a legal tribunal.

I am of opinion, therefore, that a new trial ought to be granted.

Trumbull, Edmond, Smith, Brainard and Gould, Js. were of the same opinion.

Peters, J. The " west line of *Main* street" is a boundary of the prison limits ; and, at the time of the escape alleged, the prisoner was without this line, as fixed by the city

council, and a survey of the street as anciently established, but within it, as actually opened for thirty years. And the question is, what is intended by *Main* street ; technically, a highway, defined by lines and limits, or, vulgarly, a public path ? When courts of record speak by record, of matters of record, they use the language of the law, and not common parlance. Lines of highways are established by law, and are not as moveable as stores and fences. A line is the nearest distance between two points, and *ex vi termini* is straight, unless the contrary is expressed. When the contrary is intended, the order follows visible monuments.

But it is said, that the *practical* line was intended ; as it was not the object to entrap prisoners, but to confine them within palpable limits. The defendant was gaoler. He was furnished with a copy of the order, and was bound to know, and to make known to his prisoners, the palpable limits thereby prescribed.

But the complaint is not, that the court on the circuit *judged wrong upon the evidence,* but that they *admitted improper evidence.* I cannot say this of the act of the city council. The charter of the city, which is a public act, expressly empowers them " to lay out new highways, streets, &c. or to alter those already laid out." Were there any irregularity in their proceedings, it ought to appear in the motion. It does not appear in the recital.

But if the court erred in this, still, as it appears by the survey of *Main* street, as anciently established, given in evidence by the defendant, that the prisoner was without *Main* street, and consequently, without the limits of the prison, a new trial ought not to be granted.

HOSMER and CHAPMAN, Js. gave no opinion, the former being related to one of the parties, and the latter not having been in court when the case was argued.

New trial to be granted.